IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY A. BAKER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 08-28 |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff, Jeffrey A. Baker, seeks judicial review of a decision of Defendant, Commissioner of Social Security ("the Commissioner"), denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 401-433 and §§ 1381-1383f.[1] Presently before the Court are the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, Plaintiff's motion for summary judgment in which he seeks a remand of the case for further proceedings will be granted, and the

---

[1]The Social Security system provides two types of benefits based on an inability to engage in substantial gainful activity: the first type, SSI, provides benefits to disabled individuals who meet low-income requirements regardless of whether the individuals have ever worked or paid into the Social Security system, and the second type, DIB, provides benefits to disabled individuals who have paid into the Social Security system through past employment. Belcher v. Apfel, 56 F.Supp.2d 662 (S.D.W.V. 1999). For purposes of DIB, Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2009. (R. 80).

1

Commissioner's cross-motion for summary judgment will be denied.

**I. Background**

Plaintiff filed applications for DIB and SSI on July 19, 2004, alleging disability since June 16, 2004. (R. 77-79, 443-46). Following the denial of Plaintiff's applications for DIB and SSI, he requested a hearing before an Administrative Law Judge ("ALJ"). (R. 39-45). At the hearing, which was held on November 8, 2005, Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. (R. 618-84).

On February 15, 2006, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI based on his conclusion that Plaintiff retained the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.[2] (R. 21-31). Plaintiff requested review of the ALJ's decision. (R. 17). However, the request was denied by the Appeals Council on January 11, 2008. (R. 7-10). This appeal followed.

The Court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence, which has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

---

[2]The Social Security Regulations define RFC as the most a claimant can still do despite his or her limitations. See 20 C.F.R. § 404.1545.

2

It consists of something more than a mere scintilla, but something less than a preponderance. <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 406 (3d Cir.1979). Even if the Court would have decided the case differently, it must accord deference to the Commissioner and affirm the findings and decision if supported by substantial evidence. <u>Monsour Medical Center v. Heckler</u>, 806 F.2d 1185, 1190-91 (3d Cir.1986).

## II. Facts

Plaintiff was born on August 18, 1963. At the time of the hearing before the ALJ, he was 42 years old. With respect to education, Plaintiff is a high school graduate. (R. 623). Plaintiff is 5'5" tall, and he weighs 280 pounds. (R. 624). In the past, Plaintiff has been employed as a warehouse worker, a leather cutter, and a repairman, inspector and foreman for a tire company.[3] (R. 627-33).

In a Disability Report completed by Plaintiff on September 16, 2004, Plaintiff indicated that he is disabled due to arthritis, a torn rotator cuff, an anxiety disorder and asthma.

---

[3]At the hearing before the ALJ, the VE testified that Plaintiff's past employment involved medium or heavy exertion levels. (R. 674-76). The Social Security Regulations define such work as follows: "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567(d).

3

With respect to the manner in which his medical impairments limit his ability to work, Plaintiff stated: "the arthritis travels to different parts of body, feet, hands, knees, shoulders and hands. Hands will not straighten out, limited lifting, constant pain, had rotator cuff surgery on left shoulder and will have rt shoulder done." (R. 84-85).

Plaintiff's administrative file includes records and/or reports for the relevant time period from the following health care facilities and providers: (1) Altoona Hospital (R. 393-98); (2) Blair Medical Associates - Jennifer Murnyack, D.O., Plaintiff's primary care physician ("PCP") (R. 187-95, 286-318, 354-63, 375-82); (3) Blair Orthopedic Associates - Joshua Port, M.D., an orthopedic surgeon (R. 229-39, 385-92); (4) Behnam Khaleghi, M.D., a rheumatologist (R. 240-41, 319-36, 364-65, 416-23); (5) UPMC Bedford Memorial Hospital (R. 264-65, 266-70, 271-78, 337-53); (6) HealthSouth Rehabilitation Hospital of Altoona (R. 279-85, 399-415); (7) Bedford-Somerset MHMR - Kim Mullaney, M.S., a mental health therapist (R. 424-26); and (8) Bedford-Somerset MHMR - Edward M. Lipski, M.D., a psychiatrist (R. 427-42). In addition, Plaintiff's administrative file contains a Physical RFC Assessment completed by a non-examining State agency medical consultant on October 19, 2004 (R. 242-49), and a Psychiatric Review Technique Form completed by a non-examining State agency psychological consultant on October 20, 2004 (R.

250-63).

## III. ALJ's Decision

When presented with a claim for Social Security disability benefits, an ALJ must follow a sequential evaluation process,[4] which was described by the United States Supreme Court in Sullivan v. Zebley, 493 U.S. 521 (1990), as follows:

\* \* \*

> Pursuant to his statutory authority to implement the SSI Program, (footnote omitted) the Secretary has promulgated regulations creating a five-step test to determine whether an *adult* claimant is disabled. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). (footnote omitted). The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work. See 20 C.F.R. §§ 416.920(a) through (c)(1989). In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. See 20 C.F.R. pt. 404, subpt. P, App. 1 (pt. A)(1989). If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. § 416.920(d). If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits. §§ 416.920(e) and (f).

\* \* \*

493 U.S. at 525-26.

With respect to the ALJ's application of the sequential evaluation process in the present case, steps one and two were

---

[4]See 20 C.F.R. § 404.1520(a)(4).

5

resolved in Plaintiff's favor; that is, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability and the medical evidence established that Plaintiff suffers from the severe impairments of bilateral shoulder impingement with synovitis, rotator cuff tears with a history of surgical repair and mildly active rheumatoid arthritis.[5] (R. 22-24). Turning to step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of any impairment listed in Part 404, Subpart P, Appendix 1 of the Social Security Regulations. (R. 24-28). Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, concluding that Plaintiff retained the RFC to perform work at the light exertion level with the following limitations: (a) no more than occasional kneeling, crouching or overhead reaching; (b) no crawling, climbing, overhead pushing and pulling, exposure to prolonged cold temperatures, exposure to extreme wetness and humidity or exposure to dangerous machinery; (c) a sit/stand/walk option for up to 5 times an hour for sedentary jobs; and (d) no more than

---

[5]Rheumatoid arthritis is a long-term disease that causes inflammation of the joints and surrounding tissues. Eventually, joint pain appears. When the joint is not used for a while, it can become warm, tender and stiff. When the lining of the joint becomes inflamed, it gives off more fluid and the joint becomes swollen. Joint pain is often felt on both sides of the body, and may effect the wrists, knees, elbows, fingers, toes, ankles or neck. www.nlm.nih.gov/medlineplus/encyc (last visited 11/20/2008).

6

simple, routine, repetitive tasks and simple work-related decisions. (R. 28). As to step four, the ALJ found that Plaintiff could not perform his past relevant work due to the exertion level of the jobs. (R. 28-29). Finally, at step five, based on the testimony of the VE at the hearing, the ALJ found that considering Plaintiff's age, education, past work experience and RFC, there were a significant number of other jobs in the national economy which Plaintiff could perform, including the unskilled light jobs of an inspector of medical products and a fabricator and the unskilled sedentary jobs of a table worker and an order clerk.[6] (R. 29).

## IV. Analysis

Plaintiff raises several arguments in support of his request for a remand of this case to the Commissioner for further consideration, which will be addressed individually.

---

[6]The Social Security Regulations define sedentary and light work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

**A**

First, Plaintiff asserts that the ALJ's assessment of his RFC was erroneous because it failed to include the manipulative limitation resulting from the rheumatoid arthritis in his fingers and hands. After consideration, the Court agrees.

On October 19, 2004, a State agency medical consultant completed an assessment of Plaintiff's physical RFC based on a review of the evidence in Plaintiff's administrative file. Among other things, the medical consultant opined that Plaintiff has limitations with respect to "[f]ingering (fine manipulation)" due to rheumatoid arthritis. (R. 245). A year later, on October 21, 2005, Dr. Behnam Khaleghi, a rheumatologist who has treated Plaintiff on a regular basis since September 2004, completed a "Multiple Impairments Questionnaire" in which he opined that Plaintiff has "marked" limitations (i.e., is essentially precluded) with respect to his ability to grasp, turn and twist objects and his ability to use his fingers and hands for fine manipulation.[7] (R. 419-20).

---

[7]Unlike Dr. Khaleghi, the State agency medical consultant who completed the physical RFC assessment in October 2004 did not express an opinion on the extent of the limitation on Plaintiff's ability to use his fingers and hands for fine manipulation. In this regard, the Court agrees with Plaintiff that the ALJ should have sought an opinion on this issue from the medical consultant before assessing his RFC, or the ALJ should have sought an opinion from the VE concerning the impact of "something less than a marked limitation in [the] ability to perform fine manipulation" on an individual's ability to work. (Document No. 12, p. 21 fn. 13). Also, the ALJ could have scheduled a

8

Because the foregoing medical evidence was not controverted by any treating, examining or consulting medical source, and because any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled occupational base,[8] the ALJ erred by omitting a manipulative limitation from Plaintiff's RFC assessment. Further, because the hypothetical question posed to the VE was derived from the deficient RFC assessment, the VE's testimony on which the ALJ relied in denying Plaintiff's applications for DIB and SSI does not constitute substantial evidence.[9] See Ramirez v. Barnhart, 372 F.3d 546 (3d Cir.2004).

In addition, as noted by Plaintiff, the ALJ's reason for rejecting the manipulative limitation placed on the hypothetical individual by counsel is erroneous. Specifically, the ALJ stated:

> "While the vocational expert was asked to assume further restrictions upon the hypothetical person's residual

---

consultative examination of Plaintiff to obtain an opinion concerning the extent of his manipulative limitation.

[8]See Social Security Ruling 96-9p.

[9]Significantly, as noted by Plaintiff, when asked by counsel whether the jobs cited by the VE in response to the ALJ's hypothetical question could be performed by an individual who was markedly limited in the ability to use his fingers and hands for fine manipulation and markedly limited in the ability to grasp, twist and turn objects, the VE responded that all employment would be precluded. (Document No. 12, p. 20, R. 679-80).

9

functional capacity, including the need for excessive breaks
and absences, limitations on fine manipulation, and the need
for decreased concentration for five to 10 minute (sic) an
hour, the Administrative Law Judge does not find these
limitations or restrictions relevant or pertinent to the
claimant's residual functional capacity. They are based
upon the claimant's subjective allegations, which, as
discussed above in this decision, are not supported by the
record as a whole." (R. 29).

Contrary to the ALJ's reason for rejecting counsel's inclusion of a manipulative limitation on the hypothetical individual, Plaintiff did not testify about his ability to engage in fine manipulation during the hearing, and the only medical sources who addressed the issue agreed that Plaintiff has limitations with respect to fine manipulation due to rheumatoid arthritis. (Document No. 12, p. 21 fn. 13).

Based on the foregoing, the case will be remanded to the Commissioner for a further assessment of Plaintiff's RFC and additional VE testimony.

**B**

In <u>Newell v. Commissioner of Social Security</u>, 347 F.3d 541 (3d Cir.2003), the Court of Appeals for the Third Circuit addressed the issue of the evidence required to establish a severe impairment at step two of the sequential evaluation process for reviewing disability claims, stating:

\* \* \*

> The step-two inquiry is a *de minimis* screening device to dispose of groundless claims. <u>See</u> <u>Smolen v. Chater</u>, 80 F.3d at 1290; <u>McDonald v. Secretary of Health & Human Servs.</u>, 795 F.2d 1118, 1124 (1st Cir.1986). An impairment or combination

10

of impairments can be found "not severe" only if the
evidence establishes a slight abnormality or a combination
of slight abnormalities which have "no more than a minimal
effect on an individual's ability to work." SSR 85-28, 1985
SSR LEXIS 19, at *6-7. Only those claimants with slight
abnormalities that do not significantly limit any "basic
work activity" can be denied benefits at step two. See
Bowen v. Yuckert, 482 U.S. at 158, 107 S.Ct. at 2300
(O'Connor, J., concurring). If the evidence presented by
the claimant presents more than a "slight abnormality," the
step-two requirement of "severe" is met, and the sequential
evaluation process should continue. See Smolen v. Chater,
80 F.3d at 1290. Reasonable doubts on severity are to be
resolved in the favor of the claimant. (footnote omitted).

\* \* \*

347 F.3d at 546-47.

In light of the standard noted in Newell for evaluating the "severity" of a disability claimant's impairments at step two of the sequential evaluation process, Plaintiff argues next that the ALJ erred by finding that his back pain and mental impairment were not severe impairments.[10] After consideration, the Court agrees in part. Specifically, on remand, the ALJ will be directed to reconsider his step two determination with regard to Plaintiff's back pain. However, based on the evidence in Plaintiff's administrative file at the time the ALJ issued his decision, the Court is compelled to conclude that substantial evidence supported the ALJ's determination that Plaintiff's mental impairment did not constitute a severe impairment.

---

[10]As noted previously, at step two, the ALJ concluded that Plaintiff's severe impairments were limited to bilateral shoulder impingement with synovitis, rotator cuff tears with a history of surgical repair and mildly active rheumatoid arthritis. (R. 22).

11

Turning first to Plaintiff's back pain, in his decision, the ALJ noted Plaintiff's history of back pain with a positive straight leg raise test,[11] but concluded that the impairment was not severe at step two of the sequential evaluation process because the "condition resolved within 12 months of onset with treatment, including some sacroiliac joint injections,"[12] and because the records of Plaintiff's PCP "do not show any significant complaints from or ongoing treatment for this condition." (R. 23).

Based on the ALJ's failure to discuss, or even mention, significant probative evidence regarding Plaintiff's back pain which supports a finding that this condition also constitutes a severe impairment under the standard noted in Newell, supra, the Court concludes that a remand of this case is necessary for further step two analysis. See Fargnoli v. Massanari, 247 F.3d 34 (3d Cir.2001)(Although ALJ in a Social Security disability case is not expected to make reference to every relevant treatment note in a case where the claimant has voluminous

---

[11] The straight leg raise, also called the Lasegue's sign or Lasegue's test, is a test done during a physical examination to determine whether a patient has an underlying herniated disk. www.wikipedia.org (last visited 11/20/2008).

[12] Plaintiff received sacroiliac joint injections on April 12, 2005 and May 11, 2005 at HealthSouth Rehabilitation Hospital of Altoona. (R. 279-85).

medical records, the ALJ, as the factfinder, is expected to consider and evaluate the medical evidence in the record); Wier v. Heckler, 734 F.2d 955 (3d Cir.1984)("Once again we find that the failure of an administrative law judge to mention and explain medical evidence adverse to his position has deprived the Secretary of the substantial evidence necessary to sustain his determination."); Cotter v. Harris, 642 F.2d 700 (3d Cir.1981) (Ruling that Social Security claimant was not disabled was required to be vacated because ALJ failed to explain his implicit rejection of evidence which supported the disability claim or even to acknowledge the presence of such evidence; in the absence of such an explanation, reviewing court could not tell if significant probative evidence was not credited or simply ignored).

First, the ALJ failed to address the results of an MRI of Plaintiff's lumbar spine on February 15, 2005, which showed a mild bulge at L5-S1 and a moderate bulge at T12-L1.[13] (R. 318). Second, the ALJ failed to address the records of Dr. Khaleghi, the treating rheumatologist in this case, which note Plaintiff's complaints of back pain during office visits on February 9, 2005, April 25, 2005, June 28, 2005 and August 12, 2005. (R. 319-21, 365). Third, the ALJ failed to address the Multiple Impairments

---

[13] The lumbar spine MRI had been ordered by Plaintiff's PCP due to his complaint of back pain during an office visit on January 25, 2005. (R. 293-95).

13

Questionnaire completed by Dr. Khaleghi on October 21, 2005, which notes Plaintiff's complaints of constant back pain. (R. 416-23). Fourth, the ALJ failed to address Plaintiff's daily use of Vicodin since January 25, 2005 to control his back pain.[14] (R. 286, 290, 293, 319-20, 420, 648). Finally, the ALJ failed to address Plaintiff's testimony concerning the reason he only received two sets of sacroiliac joint injections by a pain specialist in the spring of 2005.[15] (R. 661-62). On remand, the ALJ will be directed to address the foregoing evidence and render a further decision regarding the severity of Plaintiff's back pain.

### ii

With respect to Plaintiff's mental impairment, in September 2005, Plaintiff sought mental health treatment at Bedford-

---

[14]Vicodin is a combination of Acetaminophen and Hydrocodone that is used to relieve moderate to moderately severe pain. Hydrocodone can be habit-forming. www.nlm.nih.gov/medlineplus/druginfo (last visited 11/20/2008).

[15]Contrary to the ALJ's suggestion that the sacroiliac joint injections Plaintiff received in April and May of 2005 "resolved" his back pain, Plaintiff testified at the hearing in November 2005 that he did not receive any further injections because the pain relief obtained from the injections was temporary and the pain specialist informed him that he "can't get (sic) keep getting those shots forever, because it's not good for your body." (R. 662). In this connection, the Court notes that Plaintiff had been referred for the sacroiliac joint injections by Dr. James Burke, a neurosurgeon, who diagnosed Plaintiff with bilateral sacroiliac joint dysfunction. (R. 282). This condition causes low back and leg pain and results from inflammation of the sacroiliac joint. www.wikipedia.org (last visited 11/20/2008).

14

Somerset MHMR for depression and anxiety. During his first individual counseling session with a therapist, Plaintiff requested referral to a psychiatrist for evaluation due to his concern about the number of medications he was taking for his various conditions.[16] (R. 426, 435). As a result, Plaintiff was referred to Dr. Edward M. Lipski who evaluated Plaintiff on October 25, 2005.

In his report of Plaintiff's psychiatric evaluation, Dr. Lipski diagnosed Plaintiff with major depression and an anxiety disorder, and he assessed Plaintiff's score on the Global Assessment of Functioning Scale to be 45.[17] (R. 435-36). In a Psychiatric/Psychological Impairment Questionnaire completed in

---

[16]The referral form, dated September 26, 2005, lists Plaintiff's then current medications as follows: Diovan (high blood pressure), Albuterol (asthma), Wellbutrin (depression), Prevacid (gastroesophageal reflux disease), Singulair (asthma), Advair (asthma), Cymbalta (depression), Toprol (high blood pressure), Humira (rheumatoid arthritis), Folic Acid (rheumatoid arthritis), Vicodin (pain), Naproxen (rheumatoid arthritis), Methotrexate (rheumatoid arthritis), Plaqueril (rheumatoid arthritis) and Prednisone (rheumatoid arthritis). (R. 437).

[17]The Global Assessment of Functioning, or GAF, Scale considers an individual's psychological, social and occupational functioning on a hypothetical continuum of mental health to mental illness. The highest possible score is 100, and the lowest is 1. GAF scores between 41 and 50 denote the following: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job). American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000, at 32-34 (bold face in original).

connection with his evaluation of Plaintiff, Dr. Lipski indicated, among other things, that Plaintiff was "markedly" limited in the following areas: (a) the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, (b) the ability to complete a normal workweek without interruptions from psychologically based symptoms and (c) the ability to perform at a consistent pace without an unreasonable number and length of rest periods.[18] (R. 427-34). In finding that Plaintiff's mental impairment did not constitute a severe impairment, the ALJ specifically rejected Dr. Lipski's opinions concerning the severity of Plaintiff's depression and anxiety. Plaintiff contends the ALJ erred in doing so. After consideration, the Court does not agree.

Plaintiff was initially treated for depression and anxiety by his PCP who prescribed anti-depressant and anti-anxiety medication for him. As noted by the ALJ, as early as July 15, 2004 and as late as May 12, 2005, the records of Plaintiff's PCP do not note any functional limitations resulting from Plaintiff's mental impairment. In fact, the PCP's notes of Plaintiff's office visits on July 7, 2004, July 15, 2004, November 3, 2004, January 25, 2005, February 11, 2005 and May 12, 2005, consistently indicate that Plaintiff's judgment and insight were

---

[18] The questionnaire defined "markedly" limited as "effectively precludes the individual from performing the activity in a meaningful manner." (R. 430).

16

intact and that he displayed no depression, anxiety or agitation. (R. 187-89, 286-88, 290-92, 293-95, 302-04, 377-79). As further noted by the ALJ, on October 20, 2004, a State agency psychological consultant rendered the opinion based on a review of the PCP's records that Plaintiff had no functional limitations resulting from his mental impairment.[19] (R. 250-62).

With regard to the ALJ's decision to give greater weight to the records of Plaintiff's PCP and the opinion of the State agency psychological consultant than to the opinions expressed by Dr. Lipski concerning the severity of Plaintiff's mental impairment a year later, the ALJ adequately explained his reason for doing so. Specifically, the ALJ noted that although Dr. Lipski is a "treating" physician, the doctor's opinions were rendered after his first meeting with Plaintiff. In light of Dr. Lipski's report of Plaintiff's mental status examination during that evaluation, which was essentially unremarkable, it is clear that Dr. Lipski's opinions concerning the severity of Plaintiff's

---

[19]Specifically, the consultant found that Plaintiff's mental impairment did not result in a restriction of his daily activities, or difficulties in maintaining social functioning, or difficulties in maintaining concentration, persistence or pace, or episodes of decompensation, each of extended duration. (R. 260). The consultant further found that the limitations in Plaintiff's activities of daily living were caused by his physical impairments. (R. 262). The consultant's conclusion was based on records of Plaintiff's PCP relating to an office visit on August 12, 2004 (which the Court could not find in the administrative file), which apparently also noted that Plaintiff's judgment and insight were intact, and that he displayed no depression, anxiety or agitation during the appointment. (R. 260, 262).

17

mental impairment were based solely on information provided by Plaintiff.[20] In addition, the ALJ noted that although Plaintiff began individual mental health counseling sessions shortly before the hearing on his applications for DIB and SSI, the therapist's notes indicate that Plaintiff did not show or cancelled three of the five counseling sessions scheduled between September 15, 2005 and November 7, 2005. Based on the foregoing evidence, the ALJ's finding that Plaintiff's mental impairment was adequately treated with medication and caused no more than a minimal impact on his ability to work was supported by substantial evidence.

## C

In his decision, the ALJ found that Plaintiff's subjective allegations of disabling symptoms "are exaggerated and not fully credible." (R. 24). Plaintiff asserts that the ALJ's credibility determination was flawed. After consideration, the Court agrees.

---

[20]With respect to Plaintiff's mental status examination, Dr. Lipski's report of the evaluation states:

> "He presented as an adult, white male, who was cooperative and socially appropriate. His mood was subdued, but his affect was appropriate. His orientation and mentation were adequate. His conversation was rational and coherent. There was no evidence of thought disorganization. There were no active delusions or hallucinations. He expressed no suicidal or homicidal inclinations. His insight and judgment were adequate."

(R. 435).

When determining the credibility of a claimant's statements about symptoms, an ALJ must consider the entire case record.[21] In the present case, the ALJ violated this policy by limiting his credibility analysis to Plaintiff's treatment for rheumatoid arthritis and shoulder pain (R. 24-28), without consideration of the medical evidence relating to Plaintiff's back pain.

Further, in finding Plaintiff's subjective allegations not fully credible, the ALJ relied on his activities of daily living. However, as noted by Plaintiff, the ALJ's description of some of the evidence regarding Plaintiff's daily activities was misleading. For example, the ALJ stated that Plaintiff testified he can bathe and dress himself. In fact, Plaintiff testified that due to his back condition, he needs his wife's assistance with bathing, dressing and using the toilet "the majority of the times." (R. 649-50). Similarly, the ALJ stated that Plaintiff testified he can wash dishes. In fact, Plaintiff testified that he can wash "some dishes" before he has to sit down to alleviate his back pain. (R. 650). Finally, the ALJ stated that Plaintiff testified to watching television for 2 to 3 hours a day. However, the ALJ failed to mention Plaintiff's further testimony that he spends the majority of his time during the day lying on the couch with his feet elevated to alleviate his back pain. (R. 659).

---

[21] See Social Security Ruling 96-7p.

In sum, on remand, a further analysis of Plaintiff's credibility should be conducted.

V. Conclusion

Based on the foregoing, the decision of the ALJ will be vacated and the case remanded to the Commissioner for further proceedings consistent with this Memorandum Opinion.

*William L. Standish*
William L. Standish
United States District Judge

Date: November 25, 2008